**BENNETT et al. v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION et al.**

Court of Appeals of District of Columbia. Argued January 9, 1929. Reargued May 7, 1929. Decided January 6, 1930.

Rehearing Denied January 25, 1930.

No. 4687.

Jo. V. Morgan and Ashby Williams, both of Washington, D. C., for appellants.

Peyton Gordon, E. L. M. Archey, and Stephen Barker, all of Washington, D. C., for appellees.

812

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District, dismissing appellant's bill upon the merits.

On October 29, 1917, the United States Shipping Board Emergency Fleet Corporation (hereinafter called the Fleet Corporation) entered into a contract with the Newburgh Shipyards, Inc. (hereinafter called the Shipyards Corporation), located at Newburgh, N. Y., for the construction of four vessels, and on March 16, 1918, a supplementary agreement was entered into for the construction of six additional vessels upon the same general terms and conditions. Under those contracts the Shipyards Corporation was designated and treated as the agent of the Fleet Corporation. The Shipyards Corporation was to receive the entire cost of the construction of the vessels, plus a commission, which might be increased, depending upon the actual cost of the vessels. The contracts contained an estimate of the cost of each vessel, which estimated cost was to be adjusted according to the increase or decrease in the cost of labor and materials, and as so adjusted was denominated the revised estimated basis cost. It was provided that if the vessels cost less than the revised estimated basis cost, the difference between the revised estimated basis cost and the actual cost would be divided into three parts, as follows:

"Should the actual cost upon audit be less than the revised estimated basis cost, such saving shall be divided into three equal parts, one of which shall accrue to the agent [the Shipyards Corporation], one to the owner [the Fleet Corporation], and the third shall be distributed in such manner as may be agreed to by the owner and the agent with a view of recognizing continuous, faithful and efficient performance of duty on the part of employees. Should the actual cost as ascertained by the aforesaid audit be greater than the revised estimated basis cost, one-half of such increase shall be deducted from the agent's fee aforesaid, and the remainder shall be borne by the owner, provided, that in no case shall the agent's average fee for each completed vessel, after making all deductions and/or additions provided for in any article hereof, be less than the average minimum fee mentioned in article XXIII hereof."

The bill alleges that, as an inducement to enter the employment of the Shipyards Corporation, prospective employees were told by the officers of the Shipyards Corporation of the above provision in the contract, "and that in the event the cost of said vessels should be kept down on such an economical basis that the actual cost should be less than the estimated cost, then and in that event the employees rendering continuous, faithful, and efficient service would participate in one-third of the said savings on a fair and equitable basis." The bill further alleges that "the plaintiffs [appellants], and those similarly situated in whose behalf the suit is brought, during the construction of the ten vessels rendered continuous, faithful, and efficient performance of duty"; that the employees of the Shipyards Corporation, relying on the statements made to them that they would participate in the savings, "remained at work on many occasions throughout the period of construction of said vessels for hours of work longer than those for which they had contracted. The employees repeatedly requested and demanded increases of salary, but on account of the representations made to them that they would participate in one-third of the savings on the construction of said vessels on a fair and reasonable basis, and in the expectation of such participation, and in consideration thereof, the employees did not insist upon their demands for increase of pay, notwithstanding living and other expenses had, on account of the war, materially increased, and notwithstanding employees of other shipyards throughout the country were receiving substantial increases in salary."

The bill further alleges that ten vessels were built by the Shipyards Corporation, the last ship being completed and delivered on April 27, 1920; that the Fleet Corporation thereafter caused an audit to be made, and that the audit developed that the ten vessels actually cost $930,000 less than their estimated cost, and that in a settlement between the Shipyards Corporation and the Fleet Corporation the Shipyards Corporation was allowed one-third of this sum; that appellants, having "rendered continuous, faithful, and efficient" service, are entitled to one-third. It is further alleged in the bill that by the Act of June 12, 1922 (42 Stat. 635, 647), there was appropriated to the Shipping Board, acting for the Fleet Corporation, and to the Fleet Corporation, a large sum of money for the payment of claims, damage charges, and miscellaneous adjust-

ments against the Fleet Corporation arising under contracts, express or implied; that by the Act of February 13, 1923 (42 Stat. 1227, 1241, 1242), it was provided that any part of the sum appropriated by the Act of June 12, 1922, remaining unexpended or uncommitted on July 1, 1923, should be covered into the United States treasury; that after the passage of the Act of February 13, 1923, and before July 1, 1923, the Fleet Corporation and the Shipping Board caused the sum of $310,000 appropriated by the Act of June 12, 1922, to be committed for the payment of the claims of the plaintiffs [appellants] and others similarly situated in whose behalf they sued, "which fund the officers and agents of the Fleet Corporation and of the Shipping Board hold for the benefit of the plaintiffs and those similarly situated in whose behalf this suit is brought"; that the Fleet Corporation and the Shipping Board in its behalf have refused to agree to any plan or to make any distribution among plaintiffs (appellants) and others similarly situated, and "have denied the existence of any legal obligation under the terms of said contract to make any distribution whatever of said one-third of the savings effected in the construction of the vessels," etc.

The bill prayed for a rule requiring the Fleet Corporation, its president, and the commissioners of the Shipping Board to show cause why they should not be enjoined pending suit from covering into the treasury of the United States the alleged fund, and why such fund should not be impounded into the registry of the court, and why the Secretary of the Treasury and the Treasurer of the United States should not be enjoined from receiving the fund into the treasury.

Another prayer is that the court determine what shall be a fair, reasonable, and equitable basis of distribution of the fund among the plaintiffs (appellants) and others similarly situated, and that the Fleet Corporation be directed to make such distribution; that the cause be referred to the Auditor to determine the number of employees, the amount of their wages and salaries, the length of employment, and other matters necessary to a proper determination of a fair and reasonable basis of distribution of said fund, and, if necessary, that trustees be appointed to carry out the same; that the Fleet Corporation pay to each of the plaintiffs (appellants), and those for whom the suit is brought, the amount to which each is entitled out of such fund; that the plaintiffs (appellants) have a judgment therefor as at law, and for general relief.

A rule to show cause issued. In the answer of the treasurer of the Fleet Corporation and an affidavit of the general comptroller thereof it was denied that the sum appropriated by any act of Congress was caused to be committed for the payment of plaintiffs' (appellants') claim, or that any sum was retained out of the Treasury of the United States, or that the alleged fund was committed as stated in the bill. It also denied that either the Fleet Corporation or the Shipping Board held any fund for the benefit of the plaintiffs (appellants). Appellees, other than the Secretary of the Treasury and the Treasurer of the United States, filed a motion to dismiss the bill. This motion was denied, and appellees filed an answer, putting in issue all material allegations of the bill, except those alleging that the contract was made and the terms of it, the building of the vessels, and the passage of the several acts of Congress referred to in the bill. Other questions which were raised in the answer need not be noticed here.

The cause was then referred to the auditor "to make and conduct an investigation as to the facts in the cause; * * * the final determination of all issues of fact and law to be made by the court." Thereafter the auditor was directed to go to the office of the Shipyards Corporation and examine its books and records, including its pay rolls, and the wages of employees in connection with the construction of the ships contracted for, and make his report of such examination to the court, along with his report of other facts and findings in accordance with the order of reference.

In his report the auditor found that there had been savings as contemplated by the contract; that the provision regarding savings was "brought to the attention of employees"; that appellants and "hundreds of other employees rendered faithful, continuous, and efficient services," and were entitled to share in such savings to the extent of one-third thereof.

To the findings of the auditor appellees filed numerous exceptions. Upon final hearing, and upon consideration of all the evidence, the court found, first, that under a proper interpretation of the contract and an accurate method of calculation under it no savings had been effected; second, that the evidence failed to show that appellants as a class had rendered faithful, continuous, and efficient services, or that representations had been made to them as a class with reference to the saving clause of the contract.

■ When the contract between the Fleet Corporation and the Shipyards Corporation was entered into, the United States was at war, and it was imperatively necessary that ships should be constructed in the shortest possible time. On this point the vice president of the Shipyards Corporation, testifying for appellants, said: "We knew these ships were wanted in a hurry." Manifestly, it was to insure, if possible, diligent and efficient service in the construction of the ships that the provision was inserted in the contract that, "should the actual cost upon audit be less than the revised estimated basis cost, such saving shall be divided into three equal parts, one of which shall accrue to the agent, one to the owner, and the third shall be distributed in such manner as may be agreed to by the owner and the agent with a view of recognizing continuous, faithful and efficient performance of duty on the part of employees." It will be observed that, if there was a saving, one-third was to "accrue to the agent, one-[third] to the owner" unconditionally. In other words, should there be a saving, the Shipyards Corporation and the Fleet Corporation (the parties to the contract) were to receive two-thirds of such saving, irrespective of the cause of such saving. But the provision as to the remaining third of the saving was quite different. This third was to be distributed in such manner as might be agreed to "by the owner and the agent with a view of recognizing continuous, faithful and efficient performance of duty on the part of employees." The service to be recognized was to be *"continuous, faithful and efficient."* The purpose was to overcome interruptions through strikes, transient or intermittent service, and inefficiency. The question whether the service of employees as a class answered these conditions was for the owner and agent, and, unless the facts were so clear as to raise an implication of bad faith, there is no basis for interference by the court.

■ On the question of the representations to employees and the character of their services, two witnesses only, and they for appellants, testified before the auditor. First was Mr. Edwin C. Bennett, one of appellants, who was vice president and general manager of the Shipyards Corporation throughout the period covered by the construction of the ships. On cross-examination this witness testified: "None of the vessels were constructed by the Newburgh Shipyards on time. Applications were made for an extension of time, which were in some instances granted. The witness does not know of his own knowl-

edge respecting the penalties assessed for delay in constructing the ships. Delays were occasioned by strikes of our own employees." The witness further testified that he made representations with respect to savings to some of the higher employees he engaged, and some he did not; that representations were made to the workmen themselves by Mr. Desmond, president of the company, but that he never did; that it was his understanding "that the distribution should only go to the salaried employees, whose wages were not controlled by the Macy Award Board."

The witness further testified on cross-examination that there were certain increases in wages granted to employees; that these increases were made by the Macy Wage Board and affected the craftsmen only; "that some increases were granted in the clerical force and approved by the Fleet Corporation. They could not hold this class of employees unless they gave them an increase. The Fleet Corporation allowed the Newburgh Shipyards to pay the higher rate of compensation. The witness received an increase. In some cases that was to keep them satisfied and pay them for the work they were doing, but in most cases the increase in wages on the part of the mechanics made a difference between a mechanic and a foreman, so we had to increase these men; otherwise we would have lost them, irrespective of the clause in the contract which gave them a participation in the savings, but we always lagged behind."

The second witness was Mr. Desmond, president of the company. On direct examination this witness testified that "in several cases wages were jumped at Newburgh when the officials of Newburgh Shipyards, Inc., did not want to have them jumped; that the board called the Macy Board made all wages the same along the Atlantic seaboard, and the Newburgh Shipyards, Inc., was absolutely bound by the board. * * * I have not any personal computations on the increase of wages. That is a matter of record, but my opinion is that it was very excessive and the increases were in a very substantial amount. The prevailing wages in Newburgh when we signed that contract were very low, and the later wages as authorized were very high. They were probably 75 per cent. more. The increase in pay of the overhead people was about the same." As to representations to the employees concerning savings, the witness said: "It is almost entirely true that representations with respect to savings were made to the heads of the departments and not to the class of employees covered by the subsequent Macy Award."

The witness further testified that knowledge of the saving provision was quite general, and continued: "I can say positively that I never made a statement to the employees, as a whole, that would define in any way how this hoped-for savings was to be distributed. * * * The reason for that was that I did not want to be caught with any statements that I would not be able to back up. I realized that the clause was open to a pretty wide construction and determination, and I never did anything in my talks with the foremen and superintendents, which were very frequent, practically every week, to indicate how that clause was to be interpreted, for the reason that there was another party to the distribution, namely, the Emergency Fleet Corporation, whose actions, of course, I could not control or determine in advance. I did, however, very freely quote the language of the clause, which helped to convey the impression, which I much desired to convey, that, if our yard was especially efficient in its performance of these contracts, there might be substantial sums available for distribution to such persons as the Emergency Fleet Corporation and the Newburgh Shipyards, Inc., might later decide were entitled for the credit of that efficient performance, and, therefore, entitled to share in the distribution. Who such persons would be, I never so stated myself."

In his report, the auditor states that he made "an examination of the pay rolls of the shipyards at Newburgh," and also "a personal examination of other books and records of original entry," and that from such examination he was convinced "that the named plaintiffs [appellants] in said bill, in addition to hundreds of other employees, rendered faithful, continuous, and efficient services, in the construction of the ten vessels referred to."

In his opinion, the learned judge below quotes from the brief of counsel for appellees to the effect that the books and records of the Newburgh Shipyards merely show the names of the persons employed, and the period of employment and the salary or wages received; that the Shipyards Corporation was contemporaneously engaged upon the construction of other ships and additional facilities to the shipbuilding plant;

that the records do not indicate upon what particular contract or work the employee was engaged, or the character of the service rendered as to faithfulness and efficiency. The court then continues: "The records referred to by the auditor not being produced in court, it is not seen how the finding of fact made by the auditor can be sustained, particularly in view of the reference by him to his 'personal examination of other books and records of original entry. * * *' Whether counsel for defendants saw those other books and records of original entry is not disclosed, nor are they before the court."

In our view, the court below correctly held that appellants had failed to sustain the burden properly assumed in their bill of proving that as a class they had rendered "continuous, faithful and efficient" service, as contemplated by the saving provision of the contract. Indeed, under the evidence, the court would have been justified in an affirmative finding to the contrary. Undoubtedly this provision in the contract was meant to apply primarily to the general employees or craftsmen—the men who were actually to fabricate the ships. Under the evidence, the increase in wages of that force "was very excessive, * * * probably 75 per cent. more," and yet, according to appellants' own witness, whose testimony was not contradicted, not one ship was finished on time, and the "delays were occasioned by strikes of our own employees." In view of these uncontradicted facts, it is difficult to conceive how it may be said that the character of service of those employees was "continuous, faithful, and efficient," particularly when we consider that the United States was at war and the completion of the ships was so imperatively necessary.

Certain it is that the facts are not so plain as to raise an implication of bad faith on the part of the Fleet Corporation, and justify the court in exercising its discretion to the exclusion of that of the Fleet Corporation. This conclusion renders it unnecessary to consider other questions involved.

We therefore affirm the decree, with costs, and remand the cause for further proceedings not inconsistent with this opinion.

*Affirmed.*